Andrew Gross is here for FAMA, Marissa Snaith is here for the Department of Labor, and Mr. Gross, are you ready to proceed with your argument? I am, Your Honor. Can you hear me? Yes, we can. Thank you. Good morning. Please, the Court, I am Andrew Gross, and I represent the petitioner, FAMA Construction. The issues before the Court today is whether FAMA Construction is either directly responsible for the safety violations of the labor crews at this worksite as their employer, or, alternatively, whether FAMA is indirectly responsible for the safety violations under OSHA's multi-employer worksite doctrine. FAMA's position says it's not liable under either theory, and it's asking the Court to vacate the citation. There's no need to remand this matter. The record is complete. Now, the fundamental objective of the Occupational Safety and Health Act is to prevent workplace deaths and injuries. No one would dispute that. The Act also puts the duty on the employers to ensure the safety of their employees. But the Act is only effectively enforced if the liability is imposed on the responsible employer. Every violation should therefore ask, who is the responsible employer? Well, K.S.L.A.W. tells us that the responsible employer is the one who exercises actual direction and control over the work and the workers. The responsible employer chooses the workers, provides their tools, tells them when and where to be, what to do and how to do it, determines their compensation, pays them, files the tax returns and labor reports, accounting for distribution, profits, and compensation of the workers. This is Judge Wilson. Should we assume the applicability of the test that the Supreme Court set forth in Nationwide v. Darden? We did so in Quinlan v. the Department of Labor without deciding whether the Darden test applies. But do we look to Darden to determine whether the Secretary's decision is based on substantial evidence? We should look to those factors set forth in Nationwide v. Darden? Your Honor, I think Darden is a good starting point. But as the Court knows, that was an illicit case. And when applying it to construction, there might have been, it was a relatively small disorder, about a dozen or more factors in Darden. And when you look at construction worksites, only some of them are particularly applicable. So I really think that the focus is to look at what are those Darden factors that are relevant on construction sites. And so not only Darden, but in the Clackamas case cited in, I think, everyone's brief, clarified once again that ultimately it comes down to who controls the worker, who's in charge of direction and control. Why don't you tell us which Darden factors are not supported by, Darden factors that the ALJ relied upon are not supported by substantial evidence? Well, I think one factor is whether the particular task or work is part of the regular course of business. In this case, we're talking about roofing. Well, obviously, it's the business of my client, FEMA. They are a roofing broker. And it's also the business of the roofing labor subcontractors. That's what they do. My client wouldn't have a stable of roofing labor subcontractors if it wasn't looking for people who could install a roof. So whether the sub is in the same line of work or regularly performs the same, is in the same business, I don't think it's a particularly relevant factor. I think also there are Darden factors such as the location of the work. We're building houses here. Houses don't move. You put the roof on the house where the house stands. The ALJ agreed on that. Didn't the ALJ name two or three factors that were neutral? He did. The skill required location of work, the hired party's discretion over where, when, and how to work. The ALJ found that last factor was neutral. I'm not so sure it was. Let me ask you this. Isn't the most important factor the right to control? Yes, absolutely. That's not talking about the final product. That's talking about control, the means as opposed to the result, right? That's correct. All right. And here we're considering safety. So the most important factor, doubly important, would be the right to control the safety measures in compliance with the safety measures, wouldn't it? That's correct. And the record establishes without dispute that your client took control of the safety measures and had promulgated measures that the roofers had to follow, the roofing crews had to follow, and also had seminars on where they would attend, and also sanctioned them on at least some occasions for not following those measures. So there's absolutely no question at all that FAMA took control of the safety measures. Even to the extent, and I've never heard of this before, even to the extent of prohibiting the individual roofers from driving while intoxicated on the way to work. You know, if that's not extensive control of the means of complying with the safety requirements, I don't know what is. I strongly disagree. I think that all construction contracts at every level on down, from the owners, general contractors, down through mid-tier contractors, pushing on down to the labor subs, everyone requires a safety in their contract. They have to. Also, they put the burden on... They may require safety. You shall be safe. You shall follow safety procedures. But there's nothing in this record indicating that every independent contractor prescribes specific safety measures, and then has meetings or seminars in which he schools the independent contractor employees of how to comply with it, and then enforces them, and then sanctions them. There's nothing in this record indicating that that occurs in every case. Well, the fact remains that all construction sites have what they call two-box meetings, typically run by the general contractor, in which all subcontractors are expected to attend. But that doesn't mean that the general contractor is eyes and ears on hand to see when an employee isn't wearing his hard hat, or whether a guardrail is missing, or whether a trench is too deep, or any of the actual safety factors. Those burdens have to fall on the immediate supervisor of the workers themselves. That doesn't mean that the immediate supervisor controls, prescribes, and schools the roofers in safety measures. The fact that FAMA has rules requiring safety are a minimum standard that it expects its subcontractors to comply with. But that doesn't separate FAMA from any other mid-tier contractor. In fact, it puts them right in the same pool along with all the other mid-tier subcontractors. And counsel, where will I find that in the record, that every single independent contractor exercises this much control over safety measures? Well, I don't frame it in terms of every contractor exercises this much control. Frankly, I thought it was well settled at a given. It's not a given to me. Where in the record do we find that it's general practice in the American construction industry, or American industry in general, for the independent contractor relationship, the prime contractor or general contractor, to exercise control over safety measures and prescribe them as this one did? I don't have it at my fingertips, but I do believe the testimony of one of the principals at FAMA Construction talked about what the contracts typically involve in the construction industry and on construction worksites. I wish I had that at my fingertips right now, but I'm not. This is Judge Wilson. We're focusing on just one of the factors that the ALJ took into consideration. Probably the most significant factor, at least for me, is the representation that FAMA made to the public that the work crew were its employees on its website. Its website provides, I quote, we're a family owned and operating roofing contractor employing over 50 people who all share in the pride of providing top quality materials, professional installations, and dependable warranties to both residential and commercial roofing customers. Is there anything about that factor that we could say is not based on substantial evidence in the record? It's right on their website. Unfortunately, the website was not updated. I think Mr. Francisco Martinez explained that it's an older website. It's an unfortunate fact. The website does not reflect the actual means by which the companies and this business operate. They do not have labor crews, and they never have. Did the ALJ consider that argument and reject it? He didn't say that he considered it and rejected it. I believe he just mentioned it in his decision. Okay. All right. Well, I think you've reserved some time for rebuttal. Let's hear from Ms. Nath on behalf of the Department of Labor. Hello. This is Marissa Schnaise. Can you hear me okay? Yes, we can. Great. Thank you, Your Honor. May it please the Court. As I said, I'm Marissa Schnaise. I am representing the Secretary of Labor in this matter. FEMA insists that it has no control over its workers and no obligation to enforce worker safety. But in this Court's review of the ALJ's decision under the deferential substantial evidence test, it will find that the record here tells a very different story, and it does amply support the ALJ's findings of two alternative bases of liability. As the ALJ noted, these employees identify FEMA as their employer. They deny being in business for themselves. They've had a longstanding working relationship with FEMA for 10 to 20 years each. They cannot negotiate their pay. They don't enter into any project-specific contracts. FEMA carries workers' compensation that covers these employees. None of them carry any of their own policies. FEMA imposes mandatory safety training, safety programs, workplace rules. And as Your Honor has noted, FEMA has the power to discipline and fire noncompliant workers, which it has done in multiple instances in the past. And the Secretary finds it particularly notable as well that FEMA has repeatedly settled many prior OSHA violations, often involving the same workers at issue here, with promises to improve workers' safety, representing that it has that authority over these workers, and without contesting its liability as an employer. So based on all of these facts viewed together, the ALJ very reasonably concluded that on balance these workers were FEMA's employees, or at the very least in the alternative that FEMA is liable as a controlling employer. Again, given this Court's review under the substantial evidence test, the Court will find that the record here does adequately support the ALJ's conclusion. FEMA has not identified any record evidence that would undermine any of the ALJ's factual findings. And so the Secretary would ask the Court to affirm the ALJ's decision on either actual or controlling employer liability. The Court does not need to reach both issues. Counsel, this is Judge Carnes. Let me ask you this. Suppose we find that the ALJ with substantial evidence supported the majority of the ALJ's findings and the factors, but didn't support all of them. There were a couple of instances, we believe, where there was no substantial evidence to support them. Don't we have an obligation there to point that out and demand and tell the ALJ to go back over the decision and not consider the factors for which there is no substantial evidence? Your Honor, no, I don't believe you would. We don't make the decision ourselves once we determine the ALJ, let's say, got six of the factors right in the sense that they were supported by substantial evidence. But there are three that weren't supported by substantial evidence and one that is neutral and nobody argues about. We don't then put ourselves in the position of the ALJ or the Commission and make a determination about whether those factors support the final decision that FAMA and the employer do. Don't we send it back and say, here, you made these errors. Decide how you would have decided or now will decide without those errors. Your Honor, you would not need to send the decision back to the ALJ as long as the court finds that on balance the ALJ's decision was reasonable. Counsel, quick question here. Is the decision reasonable if it was based on nine factors, three of which have no substantial evidence to support them? How can it be reasonable? You didn't reach it in a reasonable way. Well, I think in that instance, Your Honor, the court could look at all of the other facts that the court does find there is substantial evidence to support. In this case, there is a large amount of evidence and facts that demonstrate that FAMA was the actual employer. Of course, counsel, the problem with that is, suppose the ALJ makes three errors in the factors. A couple of those three errors are decisive. They make the difference to the ALJ. The ALJ doesn't say, but for these two and those three, I would have done this, that, and the other. We don't know. All we know is that with the errors blended into the stew, the ALJ comes up and says, this is the way it goes with me. But we don't know that the ALJ would have reached the same decision but for the erroneous findings. So you're asking us, basically, to sit as the ALJ and make a redetermination without the errors. And how do we know what the ALJ would have done? The whole idea of the ALJ having the predominant amount of the decision-making authority is that's how the administrative procedure works. And if we put ourselves in the ALJ's seat, aren't we usurping that person's authority? I would disagree that you'd be usurping the ALJ's authority, even if you disagree with some of the factors that he found, as long as you find that, on balance, his decision was reasonable and there was adequate evidence in order to reach it. How do we know he would have made the same decision but for the errors? If there had not been the errors, he would have made the same decision. How are we supposed to determine that? I don't know that the court would need to determine that, necessarily, as long as... We can affirm without knowing whether the ALJ would have reached the same result if he had not erred and found factors for which there's no substantial evidence. That's your position. Our position is, yes, as long as the record reasonably supports his conclusion, which I believe it does here. Ms. Nace, is it your position, is it the position of the Department of Labor, that the ALJ is entitled to give more weight to some of the Darden factors over the other Darden factors? Yes, the ALJ is certainly entitled to give more weight where he deems it particularly probative. I think, here, one instance in that is the long-standing relationship of these parties. As the ALJ noted, these workers have worked for FAMA for anywhere from 10 to 20 years each, which is a very long-term relationship, so the duration of the parties weighs heavily in favor. Right. So my question is, let's say there are 11 factors, which would include the Darden factors and several non-exhaustive factors. If the ALJ determines that two of those factors, the weight of those, are so strong that they outweigh any factors that would support a subcontractor relationship, then the ALJ's decision, if the ALJ decides to give more weight to those two factors, then we could determine that the ALJ's decision is supported by substantial evidence? Is that your argument? Yes, absolutely, Your Honor. But how do we know which factors the ALJ gave the greatest weight to and which ones he gave the less weight to? He didn't go down and say, on a scale of 1 to 10, this factor gets a 6. On a scale of 1 to 10, this one gets a 2. We don't know that, so we could be affirming, even though the factors he gave the greatest weight to are the ones we find that he should not have considered because they're not supported by substantial evidence. Well, I think the ALJ, he did, you're correct, Your Honor, he didn't assign a specific weight, but he did say, for example, with respect to the duration of the relationship between the parties, that that factor weighed heavily in favor of finding an employment relationship. He also emphasized, as Your Honors touched on, the nearly exclusive control that FAMA exercised over the workers' safety, which is really the most important issue here. And FAMA does not contest that they have that control and that they exercise that control through their workplace safety programs, their training, their workplace rules, the discipline that they exercise, their ability to stop work, and all of that is amply supported by the record. It's not contested by FAMA. And so that, in particular, is very relevant here. So even if the court would disagree on a few other factors that the ALJ found, those are both... If we decided, this is Judge Wilson, that the ALJ got it wrong on one or two of the factors and we remanded it and sent it back, this case could, I mean, it would come back before us on appeal and we could just keep going back and forth if we examine each individual factor rather than the ALJ's decision as a whole. Wouldn't we? Yes, and I believe that that is a very good reason why it's in this court's interest to look at the record as a whole and to determine whether it was reasonable on balance based on the facts that the ALJ found. I'd also like to point out... Counsel, are you familiar with any, and you may be obviously more experienced in this area, any Administrative Procedure Act review in which the Court of Appeals said, well, the ALJ got several of these factors wrong, but we're going to formulate a harmless error standard and we believe that he would have reached the same result anyway and so we're going to affirm even though there's error. I am not familiar with any such case off the top of my head, but given that this Court has emphasized that it reviews these kinds of decisions under a highly deferential standard, I think it would certainly be within the Court's prerogative to find that based on all of the record evidence, even if the Court has some disagreement with certain factors, that on the whole the ALJ reached a reasonable conclusion. I'd also like to note that... So, in other words, this is Judge Wilson. Let's say there are eight factors and we say the ALJ got it wrong on two factors, but it got it right on the other six factors. Is the Department's position that we could affirm the ALJ's decision? Because it's based on substantial evidence? Yes. Because they got six of the eight right? Yes, absolutely. What about counsel? What about four of the eight? I think if it still seems reasonable that on balance the ALJ... What if he got one of the eight right, but we think that's close enough for government work? Can we affirm on the basis of that? Again, I suppose it would depend on exactly what that factor is and how strong it is. I think in that case, if the Court truly believed that the ALJ made seven errors of law... If there's one or eight, we could say that the ALJ's decision is not based on substantial evidence and we would reverse and remand to find that they're subcontractors instead of employees. Wouldn't that be our decision? Well, I think... Isn't that the right answer to the question? If there are eight Darden factors and the ALJ only got it right on one factor and didn't give up one factor? What if we got it right on four factors, counsel? Would that be our answer that, well, we can hold that there's substantial evidence supporting? Well, I think it's important to recognize that in addition to the 12 factors, the ALJ did find a variety of other evidence. So it might... I don't think it would be a straight numbers game as far as the 12, the six, the four factors. The ALJ also weighed the evidence as to FAMA's representation to the public. It's control over the worker's safety here. And I would also just note that... I'd like to make two quick points that, one, FAMA, although it does take issue with some of the ALJ's conclusions, it hasn't cited to record evidence that undermines the ALJ's position and it also hasn't cited any kind of authority that would demonstrate that the ALJ committed any errors in the facts that he considered probative. Counsel, one more warning. Thank you. The secretary has cited a number of persuasive cases that support the ALJ's appropriate consideration of a variety of the facts here. Also, again, if the court is perhaps not convinced on the Darden issue, there is the second basis of liability here under the controlling employer theory. And in that case, it is very specifically the control over the worker's safety that is most important. And as this court alluded to earlier, there is absolute control by FAMA over the worker's safety. FAMA does not deny that. There is more than substantial evidence in the record supporting the ALJ's conclusion on that. So if the court is not convinced on Darden, it can certainly turn to that alternative basis of liability in a firm without needing to remand anything to the ALJ. And also, importantly on that, the multi-employer liability, given FAMA's control over the worker's safety, it was under a reasonable duty to take steps to abate the violations. And here, FAMA has not made any argument that it actually met its reasonable duty. It repeatedly concedes that it never went to site in order to enforce worker safety or to observe worker compliance with their safety requirements. Just one more question with regard to the multi-employer test. We have not published an opinion overturning our opinions relying on the old Fifth Circuit law rejecting the controlling employer test, have we? No, I do not believe the Eleventh Circuit has spoken to the issue of liability under the multi-employer policy. But the earlier Fifth Circuit decisions that are within the court's binding case law, they also do not address this question specifically, which in the 2015 Hensel Phelps decision, the court can see the Fifth Circuit's treatment of those earlier cases. But importantly, FAMA did not raise any objection to the multi-employer policy, and so it has waived any right to challenge that before the court now. So the court does not need to address that issue if it chooses to address the multi-employer liability here. All right. Thank you, Ms. Nace. Is that the conclusion of my time? Well, I believe your time is up. Is that right, Ms. Geddes? Yes, Mr. Counsel, your time has expired. All right. Thank you, Ms. Nace. And Mr. Gross, do you reserve some time for rebuttal? Yes. Thank you, Your Honor. I would like to draw the panel back to the overriding principle of the Act itself, and that's to make sure that there's a safe workplace. Now, who's going to do that? That's going to be the person who's on site. To require FAMA to place a supervisor on site is an added cost that would prevent them from acquiring any of the contracts they need now. Meanwhile, the labor subcontractors who are actually on the site directing the workers and who are in control of whether the workers wear their safety harnesses, hook those harnesses up, wear their hard hats, those are the ones who are simply going to move on to some other person's job site. If you want to have a safe workplace, you have to hit the responsible employer to hold FAMA to its stale website or to essentially boilerplate contract provisions is to ignore the actual reality of work at construction sites. FAMA isn't at the job site. This is not a multi-employer situation where there's a controlling employer who is typically represented by a superintendent who's walking the grounds and sees all of the subs and all of their workers. That's the superintendent who's in position to see and observe the safety hazards. FAMA isn't in that position to put that burden on FAMA effectively puts them out of business. But it doesn't put the labor subs out of business. So they'll continue to not wear their safety harnesses. They'll continue to not wear their hard hats. So what is accomplished here? As to, there seems to be an almost a body count of how many Darden factors does it take to close the finish line. This isn't a World Series with four out of seven wins. This is a question of which factors are more important. I was asked earlier during my main argument which factors are some factors more important than others. And I do believe the relative independence of the labor subcontractor is a critically important factor. The judge, the administrative law judge did acknowledge that that element seemed to imply more of an independent status. But I think that is one of the major driving factors here because it's those independent subcontractors. They're the ones who hire the workers. They're the ones who pick them. They're the ones who are telling them whether to be safe or not to be safe. They're the ones, and I can't stress this enough, the parallel tax consistency. Not only does FAMA report these transactions a certain way, but the subcontractors all testified that independent accountants, not related to FAMA, and they all accounted as independent businesses subtracting their costs and expenses, whether that be labor, tools, equipment, all from the bid price the contractor's for and for which they were paid. This is Judge Newsom. Can I ask you just maybe sort of a fundamental question? Maybe it's a stupid question, but in the dialogue that Judges Carnes and Wilson were having with your adversary, I might have just sort of lost the thread, but what is the determination that we are reviewing for substantial evidence? Is it sort of at a granular level, each and every specific actor under the Darden test and perhaps others, or is it the ALJ's baseline determination that your client was an actual employer? The Darden test, I think, gets at whether my client is an actual employer. I do believe... You understand my question. I guess I'm asking, do we go Darden 1, substantial evidence, yes, no? Darden 2, substantial evidence, yes, no? Darden 3, substantial evidence, yes, no? Or do we say, is there substantial evidence to support the ALJ's conclusion at the end of the day that this company was an employer? And the Darden factors are informative of that determination, but ultimately we're asking the substantial evidence question with respect to the end result. I think the threshold question for this court is to determine whether the ALJ adequately weighed the different Darden factors, equating or according some of them the extra emphasis that they deserve, and according the other factors, less emphasis. It isn't simply accounting how many Darden factors support FAMA and how many Darden factors support the secretary. That's not the determinant. And if anything, with all the Darden factors, it would be most helpful for this court to provide a pecking order which factors are more important. Because that also has cases to serve. Counsel, this is Judge Carnes. As I understand it, that's not Judge Newsom's question. And if it is, I'm going to ask a different one, which is, let's say the ALJ numbers 12 findings and then has a paragraph in which he weighs the factors, one per finding, and reaches a result. The question is, do we apply the substantial evidence-supporting criteria or standards that each of those factors are to the weighing decision and result or to all of it? William, doesn't that ask the question of what is substantial? Evidence, as to one factor, may simply not be very substantial. So we would say, well, it's not substantial evidence. That factor is not as relevant as, say, direction or whether the two entities operated as separate businesses. Does that answer the question? No, but it's closer than before. I'm not going to take up any more time about that. We'll just have to make a determination of that based on the decisions. I believe my time has expired. Thank you, Mr. Groves and Ms. Nath.